**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| SARA SHANNON and ROSA PALACIOS and DEBRA CORBELLO, Individually and on behalf of all others similarly situated, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 1:20-cv-00448-LY |
| v. | § § | |
| THE ALLSTATE CORPORATION, | § § | |
| Defendant. | § | |

---

**THE ALLSTATE CORPORATION'S MOTION TO DISMISS
<u>CLASS ACTION COMPLAINT</u>**

Amy L. Ruhland (Rudd)
Texas Bar No. 24043561
DLA Piper LLP (US)
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
Telephone: 512-457-7220
Facsimile:  512-721-2220
Amy.Ruhland@us.dlapiper.com

Michael P. O'Day (admitted *pro hac vice*)
DLA Piper LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Telephone: 410-580-3000
Facsimile:  410-580-3001
Michael.Oday@us.dlapiper.com

*Attorneys for Defendant The Allstate Corporation*

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER ALLCORP. .................................................. 3

   A. Plaintiffs Cannot Prove That This Court Has General Jurisdiction Over AllCorp. ............ 5

   B. Plaintiffs Cannot Establish That There Is Specific Jurisdiction Over AllCorp. ................. 8

III. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6) ................................................................................................. 11

   A. The Statutory and Regulatory Framework ..................................................... 13

      1. The TDI And Commissioner Have Broad Authority Over Auto Insurance In Texas .. 13

      2. Private Passenger Auto Insurers Must Calculate And Charge Premium In Accordance With Their Filed Rates .......................................................... 13

   B. Plaintiffs' Allegations and Background ......................................................... 16

   C. The Filed Rate Doctrine Bars All Claims Asserted In The Complaint ............................ 19

      1. The Allstate Texas Insuring Entities Were Required To Charge The Rates Filed With The TDI and Commissioner And Cannot Be Held Civilly Liable For Doing So. ................................................................................. 20

      2. This Court May Not Alter The Filed Rates ................................................ 25

   D. Plaintiffs Fail To State A Claim For Unfair Discrimination Under Texas Law Because Texas Insurance Code Section 544.052 Relates To Discrimination In A Single Policy of Insurance (Open/Closed Book Scheme) ........................................... 29

      1. Plaintiffs Fail To Allege Discrimination In A Single Policy Of Insurance As Section 544.052 Requires ........................................................ 30

      2. In Any Event, Plaintiff's Allegations Of Similarity Between The Coverages Are Conclusory And Do Not State A Claim ............................................. 32

   E. Plaintiffs' Claims Should Be Dismissed Because They Have Not Sufficiently Alleged Injury-In-Fact .................................................................................. 33

IV.  PLAINTIFFS' CLAIMS ARE SUBJECT TO THE PRIMARY JURISDICTION DOCTRINE AND THIS COURT SHOULD DEFER TO THE TDI'S PRIMARY JURISDICTION ................................................................................ 35

   A. The Issues Raised By The Complaint Are Within The Special Competence, Expertise, And Authority Of The TDI And Commissioner ......................................... 36

   B. The Exercise Of Primary Jurisdiction Promotes Uniformity Of Complex Regulatory Laws ................................................................................... 39

V.   CONCLUSION ................................................................................................ 39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Telecomm., Inc. v. MCI Telcomms. Corp.*,
   197 F.3d 694 (5th Cir. 1999) ...................................................................................7

*Allstate Ins. Co. v. Gillespie*,
   275 Cal. Rptr. 525 (1990) ......................................................................................38

*Arkansas Louisiana Gas Co. v. Hall*,
   453 U.S. 571 (1981)................................................................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................12

*Beacon Nat. Ins. Co. v. Montemayor*,
   86 S.W.3d 260 (Tex. 2002)................................................................................36, 39

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................12, 32

*Brown v. MCI WorldCom Network Servs. Inc.*,
   277 F.3d 1166 (9th Cir. 2002) ...............................................................................27

*Calder v. Jones*,
   465 U.S. 783 (1984)..................................................................................................3

*Central Freight Lines Inc. v. APA Transport Corp.*,
   322 F.3d 376 (5th Cir. 2003) ...................................................................................7

*Cooper v. McDermott Int'l., Inc.*,
   62 F. 3d 395, 1995 WL 450450209 (5th Cir. 1995) ...............................................6

*E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*,
   948 F.3d 289 (5th Cir. 2020) ...............................................................................9, 10

*EIEIO, Inc. v. Waring Oil Co.*,
   No. A-06-CA-458-LY, 2006 WL 8433181 (W.D. Tex. Dec. 14, 2006) ................10

*Fernandez-Montes v. Allied Pilots Assoc.*,
   987 F.2d 278 (5th Cir. 1993) ...................................................................................6

*Freudensprung v. Offshore Tech, Servs.*,
   379 F.3d 327 (5th Cir. 2004) ...................................................................................7

*Goldwasser v. Ameritech Corp.*,
  222 F.3d 390 (7th Cir. 2000) ................................................22

*Grigson v. Farmers Group, Inc.*,
  No. 1:17–CV–88–LY, 2018 WL 635173 (W.D. Tex. Jan. 19, 2018).........................21, 35, 36

*Guidry v. U.S. Tobacco Co.*,
  188 F.3d 619 (5th Cir. 1999) ................................................4

*Hargrave v. Fibreboard Corp.*,
  710 F. 2d 1154 (5th Cir. 1983) ................................................7, 8

*Hogue v. United Olympic Life Ins. Co.*,
  39 F.3d 98 (5th Cir. 1994) ................................................32, 33

*Johnston v. Multidata Sys. Intern. Corp.*,
  523 F.3d 602 (5th Cir. 2008) ................................................4

*Keogh v. Chicago & Nw. Ry. Co.*,
  260 U.S. 156 (1922) ................................................20

*Korte v. Allstate Ins. Co.*,
  48 F. Supp. 2d 647 (E.D. Tex. 1999) ................................................ *passim*

*Leghorn v. Wells Fargo Bank, N.A.*,
  950 F. Supp. 2d 1093 (N.D. Cal. 2013) ................................................12

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ................................................33, 34

*Marcus v. AT&T Corp.*,
  138 F.3d 46 (2d Cir. 1998) ................................................21, 22, 26

*McCray v. Fidelity Nat. Title Ins.*,
  682 F.3d 229 (3d Cir. 2012) ................................................27

*Mercury Motor Express, Inc. v. Brinke*,
  475 F.2d 1086 (5th Cir. 1973) ................................................36, 39

*Monkton Ins. Services, Ltd. v. Ritter*,
  768 F.3d 429 (5th Cir. 2014) ................................................9

*N.C. Steel, Inc. v. Nat'l Council on Comp. Ins.*,
  347 N.C. 627, 496 S.E.2d 369 (1998) ................................................24, 27

*In re N.J. Title Ins. Litig.*,
  683 F.3d 451 (3d Cir. 2012) ................................................22, 28

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
253 F.3d 865 (5th Cir. 2001) ......................................................................10

*Patel v. Specialized Loan Servicing LLC*,
183 F. Supp. 3d 1238 (S.D. Fla. 2016) ......................................................12

*Patterson v. Rawlings*,
287 F. Supp. 3d 632 (N.D. Tex. 2018) .......................................................34

*In re Penn Title Litig.*,
648 F. Supp. 2d 663 (E.D. Pa. 2009) ..........................................................22

*Porr v. NYNEX Corp.*,
660 N.Y.S.2d 440 (2d Dep't 1997) ........................................................26, 28

*Revell v. Lidov*,
317 F.3d 467 (5th Cir. 2002) ........................................................................5

*Roussin v. AARP, Inc.*,
664 F. Supp. 2d 412 (S.D.N.Y. 2009) .........................................................20

*Rushton Gas Turbines, Inc. v. Donaldson, Inc.*,
9 F.3d 415 (5th Cir. 1993) ..........................................................................11

*Sangha v. Navig8 ShipManagement Private Ltd.*,
882 F.3d 96 (5th Cir. 2018) ..........................................................................9

*Sealed Appellant 1 v. Sealed Appellee 1*,
625 Fed. Appx. 628 (5th Cir. 2015) ........................................................6, 10

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) ......................................................................................4

*Southwestern Bell Telephone Co. v. Metro-Link Telecom, Inc.*,
919 S.W.2d 687 ...........................................................................................26

*Submersible Sys., Inc. v. Perforadora Cent., S.A.*,
249 F.3d 413 (5th Cir. 2001) ........................................................................5

*In re Sw. Bell Tel. Co., L.P.*,
226 S.W.3d 400 (Tex. 2007) ........................................................................36

*SW. Elec. Power Co. v. Grant*,
73 S.W.3d 211 (Tex. 2002) ..........................................................................20

*Taffet v. Southern Co.*,
967 F.2d 1483 (11th Cir. 1992) ...................................................................27

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 US. 308 (2007) ................................................................................12

*Tex. Commercial Energy v. TXU Energy, Inc.*,
  413 F.3d 503 (5th Cir. 2004) ........................................................20, 23

*Town of Norwood v. New Eng. Power Co.*,
  202 F.3d 408 (1st Cir. 2000) .................................................................22

*U.S. v. W. Pac. R.R. Co.*,
  352 U.S. 59 (1956) ................................................................................36

*Uniforce Temp. Pers., Inc. v. Nat'l Council on Comp. Ins., Inc.*,
  892 F. Supp. 1503(S.D. Fla. 1995) .......................................................27

*Walk Haydel & Assocs., Inc. v. Coastal Power Prod.*,
  517 F.3d 235 (5th Cir. 2008) ..................................................................4

*Wegoland, Ltd. v. NYNEX Corp.*,
  27 F.3d 17 (2d Cir. 1994)........................................................20, 22, 28

*Wilson v. Belin*,
  20 F.3d 644 (5th Cir. 1994) ..............................................................4, 11

*Winn v. Alamo Title Ins. Co.*,
  No. A-09-CA-214-SS, 2009 WL 7099484 (W.D. Tex. May 13, 2009) ......................... *passim*

*Zamber v. American Airlines, Inc.*,
  No. 4:20-cv-00114-O, 2020 WL 3163037 (N.D. Tex. June 11, 2020)............................34, 35

**Rules, Statutes**

Fed. R. Civ. P. 12(b)(1)...................................................................................33

Fed. R. Civ. P. 12(b)(2)..........................................................................1, 19, 39

Fed. R. Civ. P. 12(b)(6)............................................................................ *passim*

Tex. Ins. Code § 31.002 .................................................................................3, 13

Tex. Ins. Code § 31.021 .....................................................................................13

Tex. Ins. Code § 1951.001 .................................................................................13

Tex. Ins. Code § 1951.002 .................................................................................13

Tex. Ins. Code § 2241.1031 ...............................................................................14

Tex. Ins. Code § 2251.001 .........................................................................3, 13, 37

Tex. Ins. Code § 2251.002 ................................................................................31

Tex. Ins. Code § 2251.007 ................................................................................16

Tex. Ins. Code § 2251.052 ....................................................................13, 14, 24

Tex. Ins. Code § 2251.101 ....................................................................13, 14, 20

Tex. Ins. Code § 2251.103 ....................................................................14, 15, 38

Tex. Ins. Code § 2251.105 ................................................................................16

Tex. Ins. Code § 2254.003 ..........................................................................15, 26

Tex. Ins. Code § 544.052 ..................................................................... *passim*

Tex. Ins. Code § 544.053 ..........................................................................18, 33

Tex. Ins. Code § 544.054 ................................................................................33

28 Tex. Admin. Code § 5.9334 ........................................................................14

Defendant The Allstate Corporation ("AllCorp.") hereby moves to dismiss Plaintiffs' Class Action Complaint (the "Complaint") pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully states as follows:

## I.     INTRODUCTION

Plaintiffs' Complaint asserts allegations against AllCorp. – a non-operating holding company that has no employees and does not operate in Texas – related to the price Plaintiffs have paid for private passenger auto insurance in Texas with certain other Allstate insurance companies. This lawsuit should be dismissed because this Court lacks personal jurisdiction over AllCorp.  The reasons for Plaintiffs' shortcomings vis-à-vis personal jurisdiction are simple: AllCorp. does not promote, offer, sell, or administer any products or services, including insurance, in Texas.  It is a non-operating holding company that has no employees.  In fact, AllCorp. has no presence in Texas whatsoever.  AllCorp. does not sell or issue insurance, it does not collect any personal automotive insurance premiums, and it is not involved in any capacity with the business affairs and ratemaking procedures of Allstate Fire and Casualty Insurance Company ("Allstate F&C"), Allstate Indemnity Company ("AIC"), or Allstate County Mutual Insurance Company ("Allstate County Mutual," together with Allstate F&C and AIC, hereinafter collectively referred to as the "Allstate Texas Insuring Entities" or "ATIE").  In short, Plaintiffs have not shown – and cannot show – that this Court has personal jurisdiction over AllCorp.  Plaintiffs are keenly aware of these facts and have yet intentionally sued only AllCorp. in an attempt to avoid the application of the filed rate doctrine since AllCorp. is not a regulated entity in the state of Texas.

Notwithstanding Plaintiffs' decision to sue only AllCorp., the Plaintiffs' claims are barred by the filed rate doctrine.  The thrust of Plaintiffs' Complaint challenges the reasonableness and legality of the rates used to calculate their insurance premiums which Plaintiffs contend are

excessive and higher than prices paid by newer policyholders who present the same risk. According to Plaintiffs, this difference in pricing – between the allegedly higher premiums they paid and the lower premiums available to policyholders who present the same risk – is not based on sound actuarial principles.  However, under the Texas Insurance Code, an insurer is required to calculate the premiums it charges for private passenger auto insurance using only the rates that it has filed.  Auto insurers are prohibited from using rates that are excessive, inadequate, or unfairly discriminatory, and the Texas Department of Insurance ("TDI") is specifically charged with reviewing the filed rates and ratemaking practices for compliance with the law.   Unless disapproved by the TDI, an insurer must charge its filed rates as was done here.

Plaintiffs make no allegation that the premiums paid were not calculated in accordance with the filed rates, all of which had been filed, reviewed, and allowed by the TDI.  As such those rates are assumed to be "reasonable and non-discriminatory" under the filed rate doctrine.  *Korte v. Allstate Ins. Co.*, 48 F. Supp. 2d 647, 650 (E.D. Tex. 1999) (citations omitted).  But, Plaintiffs nonetheless present a collateral attack on those filed rates and allege that the price they paid is the result of unfair discrimination and improper rating factors used in development of the rates.  On those grounds Plaintiffs seek damages for the allegedly excessive premium they paid for their private passenger auto insurance.  Accordingly, this case represents a straightforward application of the filed rate doctrine, which bars exactly what Plaintiffs seek: review of the reasonableness and legality of the Allstate Texas Insuring Entities' ratemaking and filed rates, and relief from paying the filed rates by way of judicially-awarded damages.  The filed rate doctrine compels dismissal of Plaintiffs' Complaint with prejudice.

Plaintiffs' Complaint further suffers from several deficiencies and fails to state a cause of action under Texas Insurance Code § 544.052.  Namely, Plaintiffs do not adequately allege that

they have suffered an injury-in-fact.  Plaintiffs have received exactly what they paid for – private passenger auto insurance with their respective Allstate Texas Insuring Entity – and have not alleged otherwise.  Therefore, Plaintiffs cannot state a claim and lack standing to bring this lawsuit. What is more, with respect to the alleged "Open/Closed Book" scheme, Plaintiffs' cause of action fails as a matter of law because Texas Insurance Code § 544.052 applies only to unfair discrimination in a single policy of insurance – and not differences in pricing between separate insurance policies with separate insurance companies, as alleged by Plaintiffs.  For all of these reasons, the Court should dismiss this case with prejudice.

In the event that the Complaint is not dismissed, the primary jurisdiction doctrine requires a stay of this action pending referral to the TDI and Texas Insurance Commissioner (the "Commissioner") for resolution.  Plaintiffs' claims directly implicate the special competence of the TDI and Commissioner related to insurance ratemaking and the determination of whether rates are "excessive, inadequate, unreasonable, or unfairly discriminatory" (Tex. Ins. Code § 2251.001), or whether the rates are actuarially sound (*id*. § 2251.051(d)), as part of the broad authority to "regulate the business of insurance in this state," including to "protect and ensure the fair treatment of consumers."  *Id*. § 31.002.

## II.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER ALLCORP.

Dismissal of this lawsuit is appropriate because Plaintiffs cannot make a *prima facie* showing that this Court has either general or specific jurisdiction over AllCorp.  *Calder v. Jones*, 465 U.S. 783, 790 (1984).[1]  "Personal jurisdiction is an essential element of the jurisdiction of a

---

[1] Plaintiffs have asked the Court to enter a confidentiality and protective order relating to discovery to be conducted in the case.  *See* ECF Nos. 12, 17.  While AllCorp. agrees that entry of a protective order would be appropriate if discovery were to take place, AllCorp. opposes the entry of such an order at this time because it is premature.  As set forth herein and in AllCorp.'s simultaneously

district court, without which it is powerless to proceed to an adjudication." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623, n. 2 (5th Cir. 1999) (citing *Ruhrgas AG v. Marthon Oil Co.*, 526 U.S. 574 (1999)).  Thus, the Court must find that it has personal jurisdiction over AllCorp. before it makes any decision on the merits.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).  Plaintiffs bear the burden of establishing personal jurisdiction over a non-resident defendant like AllCorp.  *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod.*, 517 F.3d 235, 241 (5th Cir. 2008).

Where, as here, no federal law authorizes personal jurisdiction, the federal courts consider whether the forum state's laws permit the assertion of jurisdiction over a non-resident defendant like AllCorp.  *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  A "federal court sitting in diversity may assert jurisdiction if (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) due process is satisfied under the fourteenth amendment to the United States Constitution." *Id.* (quoting *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989)) (internal quotation marks omitted).  Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.  *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citations omitted).  Federal due process requires a plaintiff to prove: (1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the state; and (2) that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* at 647 (quotations and citations omitted).

---

filed Response to Plaintiff's Motion for Entry of Confidentiality and Protective Order, this Court lacks personal jurisdiction over AllCorp., and therefore discovery should not take place.  The Court should resolve the issue of jurisdiction and also determine whether Plaintiffs' Class Action Complaint states a cognizable claim for relief against AllCorp. before considering whether a protective order is appropriate.

There are two types of personal jurisdiction: general and specific.  *Id.*  General jurisdiction attaches when a defendant's contacts with the forum state are "continuous and systematic."  *Id.*  Specific jurisdiction is appropriate when a nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action.  *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 4141 n. 8 (1984)).  As explained below in greater detail, Plaintiffs' jurisdictional allegations are insufficient to demonstrate that this Court has either general or specific jurisdiction over AllCorp.

### A.  Plaintiffs Cannot Prove That This Court Has General Jurisdiction Over AllCorp.

As set forth above, to establish general jurisdiction, Plaintiffs must demonstrate that AllCorp. has had "continuous and systematic contacts" with the state of Texas.  As the Fifth Circuit has explained, this test "is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001).  Indeed, "even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) (citations omitted).  Plaintiffs have not and cannot point to any "substantial, continuous and systematic contacts" by AllCorp. in the state of Texas, and general jurisdiction is lacking.

Plaintiffs' jurisdictional allegations are set forth in four paragraphs of their Complaint. Plaintiffs initially acknowledge that AllCorp. is a Delaware corporation with its principal place of business in Northbrook, Illinois.  Compl., ¶ 18.[2]  Plaintiffs also acknowledge that AllCorp. is not a licensed insurer in Texas.  *Id.* at ¶ 19.  But Plaintiffs nevertheless claim that AllCorp. "operates

---

[2] All citations to "Compl., ¶ __" are to Plaintiffs' Class Action Complaint (ECF. No. 1), filed on April 28, 2020.

in Texas in the business of insurance" by exercising control over various *other* entities (dubbed by Plaintiffs as the "Allstate Texas Insuring Entities"), none of which Plaintiffs chose to sue. *See id.* at ¶¶ 20–21. These allegations are insufficient to establish general jurisdiction over AllCorp. for several reasons.

*First*, Plaintiffs do not even attempt to allege that AllCorp. itself conducts any business in or has any contacts with the state of Texas. Their only allegation is that AllCorp. is registered as a foreign corporation in the state of Texas and may be served through a registered agent in Texas, which is insufficient. *Id.* at ¶¶ 18–19.

*Second*, as set forth in the attached Declaration of Daniel Gordon ("Gordon Decl."), Plaintiffs' conclusory allegations that AllCorp. somehow conducts, directs, and controls insurance business in the state of Texas lack any basis. Notably, Plaintiffs cannot establish jurisdiction with allegations "directly contradicted by the defendant['s] affidavits." *Sealed Appellant 1 v. Sealed Appellee 1*, 625 Fed. Appx. 628, 634 (5th Cir. 2015); *see also Cooper v. McDermott Int'l., Inc.*, 62 F. 3d 395, 1995 WL 450450209, at *5 (5th Cir. 1995) (rejecting plaintiff's personal jurisdiction allegations and evidence submitted in support thereof that were directly contradicted by defendant's affidavits); *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993) (finding that unsupported conclusory allegations are insufficient to withstand a motion to dismiss). As Mr. Gordon has attested, AllCorp. is a Delaware corporation that has no office or place of business in Texas. Gordon Decl., ¶ 2.[3] It does not own or possesses any real property in Texas, it has no bank account or employees in Texas, and it does not even have a telephone listing in Texas. *Id.* at ¶¶ 15–17. Beyond that, contrary to Plaintiffs' factually incorrect allegations,

---

[3] All citations to "Gordon Decl., __" are to the Declaration of Daniel Gordon In Support of The Allstate Corporation's Motion to Dismiss.

AllCorp. does not sell or issue any type of insurance policy that would be subject to the requirements of the Texas Department of Insurance. *Id.* at ¶¶ 4–6. AllCorp. has no dealings with insurance ratemaking in the state of Texas, nor does it train any agents, employees, or other personnel of any of the Allstate Texas Insuring Entities in connection with the promotion, offering, or administration of any products or services, including insurance, in Texas. *Id.* at ¶ 14. Indeed, AllCorp. has no presence in Texas whatsoever. There simply is no basis for this Court to exercise general jurisdiction over AllCorp. *See Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (finding general jurisdiction lacking over a corporate defendant with much more robust contacts with the state of Texas).

*Finally*, Plaintiffs do not allege sufficient facts to demonstrate that AllCorp. acted through other, non-named entities in the state of Texas, such that AllCorp. could expect to be subject to a lawsuit in this state. "Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Hargrave v. Fibreboard Corp.*, 710 F. 2d 1154, 1159 (5th Cir. 1983); *see also Access Telecomm., Inc. v. MCI Telcomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) (noting that "typically, the corporate independence of companies defeats the assertion of jurisdiction over one by using contacts with the other."). To overcome this presumption of corporate separateness, a plaintiff must show "'proof of control by [one corporation] over the internal business operations and affairs' of another corporation to make the other its agent or alter ego, and hence 'fuse the two together for jurisdiction purposes.'" *Freudensprung v. Offshore Tech, Servs.*, 379 F.3d 327, 346–47 (5th Cir. 2004) (quoting *Hargrave*, 710 F.2d at 1160)) (alteration in original).

Plaintiffs have not even attempted to allege facts that would allow this Court to disregard the corporate separateness of the various Texas entities that AllCorp. supposedly controlled.  As explained by Mr. Gordon, AllCorp. is separate and distinct from each of the Allstate Texas Insurance Entities.  Gordon Decl., ¶¶ 8–14.  AllCorp. also carefully observes all corporate formalities when interacting with these entities—to the extent they even interact—including by maintaining separate financial accounting systems from those maintained by these entities.  *Id*. at ¶¶ 9–10, 13.  Above all else, AllCorp. exercises ***no control or authority over any of the Allstate Texas Insurance Entities***.  *Id*. at ¶¶ 9–14.  Again, AllCorp. is a non-operating holding company with no employees; it does not control the general policies or daily operations of the Allstate Texas Insurance Entities, and Plaintiffs' conclusory allegations to the contrary do not overcome the presumption of corporate separateness.  *Id*. at ¶¶ 3, 9–14.  Where, as here, Plaintiffs do not allege facts that AllCorp. shared officers or directors with any Texas-based entity, disregarded any corporate formalities, shared the same accounting system, and exercised any degree of control over the general policies or daily operations of any Texas-based entity, they cannot demonstrate general jurisdiction on the basis of activities by separate entities.  *See Hargrave*, 710 F.2d at 1160 (declining to exercise personal jurisdiction over parent company based on activities of subsidiary in the face of similarly deficient allegations).

In short, Plaintiffs cannot meet their burden to demonstrate a basis for this Court to exercise general jurisdiction over AllCorp.

**B.**    **Plaintiffs Cannot Establish That There Is Specific Jurisdiction Over AllCorp.**

Plaintiffs' allegations are likewise insufficient to demonstrate the existence of specific jurisdiction over AllCorp.  "Specific jurisdiction may exist 'over a nonresident defendant whose contacts with the forum state are singular or sporadic only if the cause of action asserted arises out

of or is related to those contacts.'" *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (quoting *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016)).   The Fifth Circuit applies a three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 296 (5th Cir. 2020) (quotations and citations omitted); *see also Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (noting that "a defendant does not have minimum contacts with a state when it does not have a physical presence in the state[, and] it did not conduct business in the state").   Plaintiffs' allegations are insufficient to meet any of these requirements.

Plaintiffs cannot demonstrate that AllCorp. purposely directed any of its activities to the state of Texas.   As explained above, AllCorp. does not itself conduct any activities in the state of Texas, nor does it maintain any presence in the state.   *See* Section II.A.1, *supra* at 3–6; *see also* Gordon Decl., ¶¶ 2–7, 14–17.   And it is not capable of issuing, writing, or selling insurance in Texas.   For this reason, AllCorp. does not promote, offer, sell, or administer any products or services, including insurance, in Texas or any other state.   Gordon Decl., ¶¶ 4–7.   Plaintiffs do not attempt to allege otherwise.   Instead, Plaintiffs hope to attribute other, non-named entities' contacts with the state of Texas to AllCorp.   *See* Compl., ¶¶ 20–21, 37.   Again, as explained above, Plaintiffs' allegations ignore that these entities are separately operated and controlled, and Plaintiffs fail to allege facts demonstrating otherwise.   *See* Section II.A.1, *supra* at 3–6.   As the Fifth Circuit has explained, a federal court need not credit conclusory jurisdictional allegations

that are controverted by evidence. *See Sealed Appellant 1*, 625 Fed. Appx. at 634; *see also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (same) (citing *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998)) ("[T]he law does not require us struthiously to credit conclusory [jurisdictional] allegations or draw farfetched inferences.").

Because Plaintiffs cannot establish AllCorp.'s minimum contacts with Texas, that should end the inquiry. *See e.g.*, *EIEIO, Inc. v. Waring Oil Co.*, A-06-CA-458-LY, 2006 WL 8433181, at *2 (W.D. Tex. Dec. 14, 2006) (where a plaintiff has not met its *prima facie* case that a defendant had minimum contacts with Texas, the reviewing court need not reach the other prongs of the jurisdictional analysis). Nonetheless, even under the second prong, Plaintiffs cannot establish that their causes of action "arise[] out of or result[]" from AllCorp.'s forum-related contacts. *E. Concrete Materials, Inc.*, 948 F.3d at 296. Indeed, AllCorp. could not have engaged in *any* of the activities in Texas allegedly giving rise to Plaintiffs' claims. AllCorp. does not hold any certificate of authority issued by the Insurance Commissioner in Texas to issue, write, or sell insurance policies in the state. Gordon Decl., ¶ 5. AllCorp. does not sell or issue any type of insurance policy that would be subject to the requirements of the Texas Department of Insurance. *Id*. at ¶ 6. AllCorp. has no dealings with insurance ratemaking in the State of Texas. *Id*. And AllCorp. does not train any agents, employees, or any other personnel in connection with the promotion, offering, or administration of any products or services, including insurance, in Texas. *Id*. at ¶ 14. Because AllCorp. does no business in Texas, Plaintiffs' claims against the corporation have nothing whatsoever to do with its actual business model or dealings. To the contrary, all the claims at issue relate solely to the filed private passenger auto insurance rates and ratemaking procedures employed by the Allstate Texas Insurance Entities, which for whatever reason, Plaintiffs chose not

to sue.  That choice has consequences.  Plaintiffs cannot maintain a lawsuit against AllCorp. in Texas.

Because Plaintiffs cannot meet the first two prongs of the specific jurisdiction analysis, this Court need not engage in the fairness inquiry contemplated by the third prong.  *Wilson*, 20 F.3d at 647.  Nevertheless, the factors to be considered with respect to the third prong also weigh against an exercise of personal jurisdiction.[4]  Because it does no business and has no employees in Texas, forcing AllCorp. to defend a lawsuit in this state, far from its base of operations, would be highly prejudicial.  Nor do the Courts of this state have any interest in adjudicating lawsuits against entities that have no contact with the state or its residents.  Plaintiffs' pursuit of the wrong entity in this Court also compromises judicial efficiency, because the parties now have to brief and the Court has to decide the threshold issue of personal jurisdiction, thereby delaying resolution of the merits of Plaintiffs' lawsuit.  Had Plaintiffs really wanted to vindicate the rights of Texas citizens that they say were harmed by companies actually operating in Texas, Plaintiffs should have sued those entities.   It would be unfair to exercise personal jurisdiction over AllCorp. based on Plaintiffs' pleading gamesmanship.

## III.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6)

Even if AllCorp. could be subject to personal jurisdiction in Texas – which it is not – the Complaint should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b)(6) requires dismissal if the plaintiff fails to plead sufficient facts to state a claim for

---

[4] The factors to be evaluated when considering the "fairness prong" are (1) the defendant's burden in having to litigate in the forum state; (2) the forum state's interest in adjudicating the suit; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the forum state's shared interest in furthering fundamental social policies.  *Rushton Gas Turbines, Inc. v. Donaldson, Inc.*, 9 F.3d 415, 421 (5th Cir. 1993).

relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations asserted must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint "requires more than labels and conclusions, a formulaic recitation of the elements of a cause of action will not do." *Id.*

When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, courts may consider the allegations in the complaint along with any documents referenced in the complaint and any matters that are properly subject to judicial notice. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 US. 308, 322 (2007) ("Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). Among those things of which a court may properly take judicial notice are an insurer's publicly available rate filings. *See, e.g.*, *Patel v. Specialized Loan Servicing LLC*, 183 F. Supp. 3d 1238, 1241 (S.D. Fla. 2016); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1106 (N.D. Cal. 2013).

In this case, Plaintiffs' Complaint should be dismissed under Rule 12(b)(6) because: (1) the claims are barred by the filed rate doctrine; (2) Plaintiffs fail to state a claim under Texas Insurance Code § 544.052 with respect to the alleged "Open/Closed Book" scheme because the allegations relate to different policies of insurance issued by different insurers, rather than a single policy of insurance; and (3) Plaintiffs fail to state a claim under Texas Insurance Code § 544.052 with respect to both alleged schemes because Plaintiffs have alleged no injury in fact (and thus also lack standing to bring this Complaint).

A.     **The Statutory And Regulatory Framework**

1.     **The TDI And Commissioner Have Broad Authority Over Auto Insurance In Texas**

The Texas Insurance Code and regulations promulgated by the Commissioner form a comprehensive scheme for the regulation of auto insurance in Texas. As the agency charged with implementing the Insurance Code, the Legislature has provided the TDI with broad authority to "regulate the business of insurance in this state," including to "protect and ensure the fair treatment of consumers." Tex. Ins. Code § 31.002. Auto insurers are prohibited from using rates that are excessive, inadequate, or unfairly discriminatory. *Id.* §§ 2251.001(1), 2251.052(b). The Commissioner serves as the TDI's "chief executive and administrative officer" and is required to "administer and enforce" the Insurance Code and regulations. *Id.* § 31.021. The Commissioner also is authorized to "adopt and enforce reasonable rules necessary to carry out" the Insurance Code's regulation of auto insurance. *Id.* § 1951.002. Accordingly, the TDI and Commissioner are responsible for overseeing auto insurance ratemaking in Texas, in order to "promote the availability of insurance" for consumers and ensure "competitive market conditions" for insurers. *Id.* §§ 2251.001; 1951.001. This includes the specific responsibility to "promote the public welfare by ***regulating insurance rates to prohibit excessive, inadequate, or unfairly discriminatory rates***[.]" *Id.* § 2251.001(1) (emphasis added).

2.     **Private Passenger Auto Insurers Must Calculate And Charge Premium In Accordance With Their Filed Rates**

All private passenger auto insurers operating in the state of Texas are required to "file with the commissioner all rates, applicable rating manuals, supplementary rating information, and additional information as required by the commissioner" prior to implementing new rates. *Id.* § 2251.101(a). Once an auto insurer has filed its rates, it is required to calculate and charge premium

in accordance with those filed rates. *Id.* Insurers cannot differentiate from their rates on file unless and until they file new rates with all required supporting information.

When setting rates, insurers *shall consider* seven enumerated factors and "any other factors…determined to be relevant by the insurer; and not disallowed by the commissioner." *See id.* § 2251.052(a). Insurers are required to submit "sufficient supporting information [] necessary for TDI to establish that a filing produces rates that are not excessive, inadequate, unreasonable, or unfairly discriminatory for the risks to which they apply. Insurers must provide sufficient documentation to justify specific rates or revisions they are proposing." 28 Tex. Admin. Code § 5.9334(h). This includes the filing of "all rates, applicable rating manuals, supplementary rating information, and additional information as required by the commissioner." Tex. Ins. Code § 2251.101(a). Additionally, under the regulations promulgated by the Commissioner, insurers are required to file, among other things, a detailed filing memorandum, loss cost information, an actuarial memorandum, actuarial support for the rates, policyholder impact information, historical premium and loss information, and expense information. 28 Tex. Admin. Code § 5.9334(h). The TDI and Commissioner also may request additional information if deemed necessary to evaluate the insurer's filed rates. Tex. Ins. Code § 2241.1031.

After the rates and supplemental rating information are filed by the insurer, the Commissioner is ***required*** to review the filed materials and "***shall disapprove*** the rate if the commissioner determines that the rate does not comply with the requirements of [Chapter 2251 of the Insurance Code]." *Id.* § 2251.103(b) (emphasis added). Specifically, Texas Insurance Code § 2251.052(b) commands that a "rate may not be excessive, inadequate, unreasonable, or unfairly discriminatory for the risks to which the rate applies." Under § 2251.051(d), a rate is:

> unfairly discriminatory if the rate: (A) is not based on sound actuarial principles;
> (B) does not bear a reasonable relationship to the expected loss and expense

experiences among risks; or (C) is based wholly or partly on the race, creed, color, ethnicity, or national origin of the policyholder or an insured.

If, upon the statutorily-required review of the filed auto insurance rates, the Commissioner determines that a rate is excessive, inadequate, unreasonable, or unfairly discriminatory, the Commissioner is required by statute to disapprove the rate. *Id.* § 2251.103(b). This includes rates that are not based on sound actuarial principles. *Id.* § 2251.051(d).

In addition to the general authority over ratemaking and regulating the conduct of insurers, the Texas Insurance Code also sets forth a comprehensive administrative procedure for the Commissioner to address excessive or unfairly discriminatory rates. *See* Tex. Ins. Code § 2254.003 (which applies when "the commissioner determines that an insurer has charged a rate for personal automobile insurance…that is excessive or unfairly discriminatory, as described by Section 2251.051."). Under that procedure, the Commissioner is authorized to issue certain refunds or discounts against future premiums to the affected policyholders – as specifically enumerated by statute. *Id.*[5] An insurer also has the right to "request [that] the State Office of Administrative Hearings conduct a rate hearing to determine whether the rate that is subject to the order is excessive or unfairly discriminatory." *Id.* § 2254.004(a). Upon conclusion of the hearing, the overseeing Administrative Law Judge is directed to prepare a proposal for decision which is sent to the Commissioner. *Id.* § 2254.004(c). The Commissioner may choose to adopt the decision, or issue her own decision. After entry of the Commissioner's decision, the insurer has the right to seek judicial review. *Id.* § 2254.004(d).

---

[5] Texas Insurance Code § 2254.003(b) allows the Commissioner to order refunds or discounts based on the portion of the premium paid that the Commissioner determines is excessive or unfairly discriminatory. This requires the Commissioner to determine the rate that policyholders should have been charged.

Policyholders also are provided the right to challenge a rate filing by initiating an administrative claim before the Commissioner. *Id.* § 2251.105(a). If a hearing is appropriate, the Commissioner is required to issue a "written notice of hearing" and conduct an administrative hearing regarding the policyholder's grievance. *Id.* § 2251.105(c). Upon conclusion of the hearing, if the Commissioner finds that the insurer's rate filing violates Section 2251 of the Insurance Code, the Commissioner may order prospective relief and "shall issue an order: (1) specifying in what respects the filing fails to meet th[e] requirements [of Section 2251]; and (2) stating the date on which the filing is no longer in effect…." *Id.* § 2251.105(d). The Commissioner's decision is subject to judicial review. *Id.* § 2251.007.

In sum, the Texas Insurance Code and regulations provide a robust and comprehensive process for administrative review of ratemaking and whether rates are excessive, inadequate, unreasonable, or unfairly discriminatory. The TDI and Commissioner are required by statute to undertake such a review whenever a private passenger auto insurer files its rates. Moreover, if a violation is found, the TDI and Commissioner are mandated by the Insurance Code to disapprove the rates. In such instances where rates for private passenger auto insurance are found to be excessive or unfairly discriminatory, the Code prescribes the remedy the Commissioner is to order. And the Commissioner must adjudicate administrative complaints regarding auto rate filings brought by policyholders against insurers. These functions have been expressly delegated by the Texas Legislature to the TDI and Commissioner and are the product of the TDI and Commissioner's special expertise and competence in ratemaking.

### B.   Plaintiffs' Allegations And Background

Texas law requires insurers to file their rates and to calculate premium in accordance with those filed rates. There is no claim that any of the Allstate Texas Insuring Entities failed to comply with these requirements. The premiums charged to Plaintiffs were exactly the amounts dictated

by the filed rates.  Plaintiffs do not contend they paid premiums in excess of the filed rates.  Rather, according to Plaintiffs, the Allstate Texas Insuring Entities' ratemaking resulted in two allegedly "discriminatory schemes, both of which involve the ATIE charging higher premiums to their more tenured policyholders than they charge otherwise identically-situated newer policyholders for the same or materially the same coverages."  Compl., ¶ 2.  Plaintiffs allege that such ratemaking lacks any actuarial justification.  *Id.*

The first allegedly discriminatory scheme is what Plaintiffs refer to as the "Open/Closed Book" scheme, whereby policyholders in the Closed Book allegedly pay more for coverage than policyholders in the Open Books based on rates that are not actuarially sound.  *Id.* at ¶¶ 35, 49 ("There is no actuarial basis for Allstate's 'open/closed book' discrimination scheme.  In fact, this discriminatory practice contravenes basic actuarial principles.  It is well accepted in the insurance industry, and as a basic principle of actuarial science, that longer tenured insurance policyholder have a more favorable loss experience (i.e. lower losses, lower risk)….").  Plaintiffs allege that the longer tenured policyholders are "walled off" from switching from one of Allstate's "closed" auto books in Texas (which no longer writes new business) to one of Allstate's "open" auto books in Texas (which does write new business).  *Id.* at ¶ 3.  Plaintiff Corbello, a Closed Book policyholder with Allstate Indemnity Company, alleges that she could obtain a lower premium based on the rates in Allstate F&C (an open book).  *Id.* at ¶¶ 119–123.  According to the Complaint, this difference is not "based on sound actuarial principles."  *Id.* at ¶ 144.  As such, the Complaint alleges that Closed Book policyholders pay "higher premiums than otherwise identically-situated new customers in the Open Books…."  *Id.* at ¶ 90.

The second allegedly discriminatory scheme is what Plaintiffs refer to as the "Price Tolerance" scheme, involving unfair discrimination based on the use of the CGR factor by Allstate

F&C to determine rates that allegedly result in the longer tenured policyholders paying more for auto insurance. *See id.* at ¶¶ 6, 55–56, 58, 62–65. Specifically, Plaintiffs allege that Allstate unilaterally places "each Allstate F&C Texas policyholder into one of approximately 922 million 'microsegments' based on the "policyholder's relative 'elasticity' or 'inelasticity' to premium price changes." *Id.* at ¶¶ 56–57. Then, according to Plaintiffs, Allstate assigns each microsegment a "micro-segment specific 'CGR factor' that in essence acts as a premium multiplier." *Id.* at ¶ 59. Plaintiffs allege that longer-tenured policyholders are assigned positive CGR factors which increase their premiums. *Id.* at ¶ 62. Plaintiffs allege that this ratemaking "is not based on the expected risk and losses for the policyholder" and thus is unfairly discriminatory. *Id.* According to Plaintiffs, the rates they pay – specifically, the CGR factors they are assigned – are unreasonable because they differentiate between policyholders solely on the basis of policyholder tenure, which Plaintiffs allege is not related to the risk they pose and thus not actuarially justified. *See id.* at ¶ 66 ("Allstate's microsegments are not risk-based.").

Based on these two alleged schemes, Plaintiffs claim that they paid excessive prices for auto insurance and assert two causes of action for discriminatory ratemaking under Texas Insurance Code § 544.052. *Id.* at ¶¶ 137–50, 151–64. Section 544.052 prohibits persons engaged in the business of insurance from engaging in or permitting "unfair discrimination between individuals of the same class and essentially the same hazard, including unfair discrimination in…rates charged for a policy or contact of insurance" unless the differences in rates "are based on sound actuarial principles." Tex. Ins. Code §§ 544.052; 544.053(a).

Plaintiffs seek to represent a putative class of Texas customers who have allegedly overpaid for auto insurance because of the alleged practices. Compl., ¶¶ 127, 138, 152. For both classes,

and causes of action, Plaintiffs seek a return of the allegedly excessive premium, statutory civil penalties, restitution, injunctive relief, and attorneys' fees and costs.  *Id.* at ¶¶ 145–50, 159–64.

As required by Texas law, the Allstate Texas Insuring Entities filed their private passenger auto insurance rates and the required supplemental rating information with the TDI and Commissioner.  These filings are a matter of public record and are publically available through the System for Electronic Rate and Form Filing ("SERFF") website at https://filingaccess.serff.com/sfa/home/TX.  Allstate F&C introduced and disclosed the use of the Complementary Group Rating factor with its rate manual and rules filing made with the TDI on June 26, 2014.[6]

### C.     The Filed Rate Doctrine Bars All Claims Asserted In The Complaint.

The Commissioner has a duty to review all auto insurance rate filings and disapprove any rates that are excessive or unfairly discriminatory, including rates that are not based on sound actuarial principles or are not based on the insurer's expected loss or expense experience.  Plaintiffs challenge the ATIE's rate filings as resulting in premiums that are excessive, unreasonable and unfairly discriminatory.  The Complaint requires this Court to evaluate the ratemaking practices and determine whether the filed rates were legal and reasonable – which is prohibited by the filed rate doctrine.[7]

---

[6] The filing was assigned the Texas Rate Filing Number R2787 and SERFF Tracking Number ALSE-129611647.  The ATIE's filings are publically available through the SERFF website using the filing reference numbers, for which this Court may take judicial notice of such public filings.

[7] Any argument that Plaintiffs may attempt to assert that the filed rate doctrine does not apply to Allstate on the basis that The Allstate Corporation is not a regulated entity necessarily fails.  As discussed above with respect to Allstate's argument for dismissal under Rule 12(b)(2) for lack of personal jurisdiction, Plaintiffs have purposely named The Allstate Corporation in a transparent attempt to avoid the filed rate doctrine.  *See* Section II, *supra* at 3–9.  Assuming, *arguendo*, that Plaintiffs' Complaint survives Allstate's Motion under Rule 12(b)(2), the fact that Plaintiffs named The Allstate Corporation as Defendant does not remove application of the filed rate doctrine.  Courts have been clear that for the filed rate doctrine to apply "the rate at issue must be filed by a

1. **The Allstate Texas Insuring Entities Were Required To Charge The Rates Filed With The TDI And Commissioner And Cannot Be Held Civilly Liable For Doing So.**

The Texas Insurance Code requires that private passenger auto insurers file the rates they charge for auto insurance with the TDI and Commissioner. Once filed, an insurer is required to charge premium based on those filed rates. Tex. Ins. Code § 2251.101(a); *see also Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 (1981). "The filed rate doctrine assumes that all rates that have been filed and approved are reasonable and non-discriminatory." *Korte*, 48 F. Supp. 2d at 650. As the Fifth Circuit has explained, "[t]he filed rate doctrine bars judicial recourse against a regulated entity based upon allegations that the entity's 'filed rate' is too high, unfair or unlawful." *Tex. Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503, 507 (5th Cir. 2004) (citing *Square D Co. v. Niagara Tariff Bureau, Inc.*, 476 U.S. 409 (1986)). "'Simply stated, the doctrine holds that any 'filed rate' … is per se reasonable and ***unassailable*** in judicial proceedings brought by ratepayers.'" *Id.* at 508 (quoting *Wegoland, Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994)) (emphasis added).

The Supreme Court of the United States established the filed rate doctrine in a case where the plaintiff alleged that the defendant illegally conspired to fix shipping rates and sought damages for the excessive rates. *Keogh v. Chicago & Nw. Ry. Co.*, 260 U.S. 156 (1922). The Supreme Court found that the plaintiff could not state a claim because the shipping rates had been filed with a regulatory agency and therefore "the rates were reasonable and non-discriminatory." *Id.* at 161. The doctrine has since been extended to state agencies. *See SW. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 216 (Tex. 2002) ("The 'filed-rate doctrine' applies when state law creates a state

---

participant in the regulated industry," but that the Defendant need not be the party that filed the rate. *Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 419 (S.D.N.Y. 2009).

agency and a statutory scheme under which the agency determines reasonable rates for the services provided."). Accordingly, courts regularly apply the doctrine to insurance rates filed with state regulators, including the TDI. *See Winn v. Alamo Title Ins. Co.*, No. A-09-CA-214-SS, 2009 WL 7099484, at *5–6 (W.D. Tex. May 13, 2009) (Sparks, J.), *aff'd* 372 Fed. App. 461 (5th Cir. 2010), *cert. denied*, 562 U.S. 890 (2010) (citing cases); *see also Korte*, 48 F. Supp. 2d at 651 (applying the filed rate doctrine to auto insurance rates).

Underpinning the filed rate doctrine are what courts have referred to as "two companion principles." *Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998). The first principle, referred to as the "nondiscrimination strand," prevents "carriers from engaging in price discrimination as between ratepayers." *Id.* This "strand" of the doctrine results in the rule that insurers may not charge anything other than the filed rate. The second principle, known as the "nonjusticiability strand," "preserves the exclusive role of regulatory agencies in approving rates and keeping courts, which are far less competent to perform this function out of the rate-making process." *Winn*, 2009 WL 7099484, at *4. As courts have explained: "[t]he nonjusticiability strand recognizes that (1) legislatively appointed regulatory bodies have institutional competence to address rate-making issues; (2) courts lack the competence to set rates; and (3) the interference in the rate-making process would subvert the authority of rate-setting bodies and undermine the regulatory regime." *Id.* (internal quotations and citations omitted).[8] Fundamentally, "[t]he purpose of the doctrine is to prevent courts from interfering with the rate-making process, a function that should be reserved for the state agency with regulatory authority." *Grigson v. Farmers Group, Inc.*, No. 1:17–CV–88–LY, 2018 WL 635173, at *3 (W.D. Tex. Jan. 19, 2018).

---

[8] The filed rate doctrine applies "whenever either the nondiscrimination strand or the nonjusticiability strand…is implicated." *Marcus*, 138 F.3d at 59. A complaint need not implicate both strands to be barred by the filed rate doctrine. *Id.*

Courts have made clear that, "[a]part from participating in the political process and filing complaints with the regulatory agencies, individual ratepayers simply have no role in attacking the reasonableness of filed rates.   Nor is there room for judicial intervention in such a case." *Wegoland*, 27 F.3d at 21.   Thus application of the filed rate doctrine requires dismissal of the complaint, regardless of the "cause of action the Plaintiff seeks to bring" or the alleged "culpability of the defendant's conduct or the possibility of inequitable results."   *Marcus*, 128 F.3d at 58.

Notably, the filed rate doctrine operates when rates have been filed with the regulatory agency who has the authority to review those rates.   *See Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 402 (7th Cir. 2000) (rejecting argument that filed rate doctrine should not apply where the reviewing agencies "rarely exercise their muscle and thus give no meaningful review to the rate structure"); *In re Penn Title Litig.*, 648 F. Supp. 2d 663, 674–75 (E.D. Pa. 2009) ("as long as the regulatory scheme requires the filing of rates with a governmental agency that has legal authority to review those rates, the filed rate doctrine applies regardless of the actual degree of agency review of those filed rates").   The doctrine does not require that the filed rates be determined by the agency.   *See Korte*, 48 F. Supp. 2d at 651–52.   Nor does it require that the rates be approved before use.   *See In re N.J. Title Ins. Litig.*, 683 F.3d 451, 456 (3d Cir. 2012) ("The Supreme Court has indicated that the doctrine applies whenever rates are properly filed with a regulating agency."); *Town of Norwood v. New Eng. Power Co.*, 202 F.3d 408, 419 (1st Cir. 2000) ("It is the *filing* of the tariffs, and not any affirmative approval or scrutiny by the agency that triggers the filed rate doctrine.") (emphasis in original).

In *Peacock v. AARP, Inc.*, the court applied the filed rate doctrine where "the allegations in Plaintiffs' Amended Complaint d[id] not raise the issue of whether the rates Defendants have submitted to the Texas Department of Insurance are 'unreasonable' – instead, the Plaintiffs…flatly

allege[d] that the rates [we]re illegal." 181 F. Supp. 3d 430, 440 (S.D. Tex. 2016). The court held that the filed rate doctrine barred the claims because the plaintiffs' purported challenge to the legality of rates was necessarily a challenge to amount paid under the filed rate. *Id.* at 441. Specifically, the court concluded that the "filed rate doctrine bar[red] Plaintiff's claims [under the Texas Insurance Code and Texas Deceptive Trade Practices-Consumer Protection Act] because these claims [were] pled to attack the legality *vel non* of the rates charged by Defendants for group insurance…." *Id.*

The schemes alleged in the Complaint challenge what the ATIE take into account during the ratemaking process before filing their rates. Under Texas law, however, an individual cannot maintain a private action to challenge the filed rates no matter how styled. *See Peacock*, 181 F. Supp. 3d at 441; *Winn*, 2009 WL 7099484, at *4; *Korte*, 48 F. Supp. 2d at 652; *see also Tex. Commercial Energy*, 413 F.3d at 507.

With regards to the alleged Open/Closed Book scheme, Plaintiffs claim that the rates for insurance with the Closed Books are not actuarially justified and that policyholders in the Closed Books pay more for coverage than policyholders in the Open Books. *See* Compl., ¶¶ 35, 49. The unfair discrimination – the wrongful treatment of two like things – is in the alleged price differential, as determined by the rating. *See id.* at ¶ 35 ("Allstate systematically discriminates against existing policyholders in the Closed Books, precluding them from the *lower rates* provided to new customers in the Open Books."). Plaintiffs contend that the price paid by the Closed Book customers is unreasonable because it is too high for the risk presented, and thus the ratemaking is not actuarially sound. *See id.* at ¶ 49 ("There is no actuarial basis for Allstate's 'open/closed book' discrimination scheme. In fact, this discriminatory practice contravenes basic actuarial principles. It is well accepted in the insurance industry, and as a basic principle of actuarial science, that longer

tenured insurance policyholder have a more favorable loss experience (i.e. lower losses, lower risk)…."). Plaintiffs' further allegations about wrongful practices to prevent policyholders in the Closed Books from switching to another Allstate insurer with an Open Book do not – and cannot – change the fact that the premiums paid by policyholders in the Closed Books are calculated based on the rates that have been filed with the TDI, without TDI's disapproval. *See N.C. Steel, Inc. v. Nat'l Council on Comp. Ins.*, 347 N.C. 627, 632, 496 S.E.2d 369 (1998) ("[A] plaintiff may not claim damages on the ground that a rate approved by a regulator is nonetheless excessive because it is a product of unlawful conduct.").

Moreover, to determine whether the difference in pricing between the Closed Books and Open Books is the product of some unfair discrimination on the part of the ATIE, a court would need to evaluate the ratemaking practices to determine whether rates of the Closed Books contravene the insurance code. Unfair discrimination does not result when rates charged are based on "sound actuarial principles." *See* Tex. Ins. Code § 544.052. An insurer's rates are set using sound actuarial principles when they consider the mandated factors and information in Tex. Ins. Code § 2251.052(a), which include expense, profit, and loss experience that is specific to that individual insurer and "any other factors…determined to be relevant by the insurer; and not disallowed by the commissioner." *See id.* § 2251.052(a). The rates of one insurer, or one book of business, cannot be said to be unfairly discriminatory solely on the basis that they are higher than another's rates.

For the Price Tolerance scheme, the Complaint alleges unfair discrimination based on the use of the CGR factor to determine rates that allegedly result in the longer tenured policyholders paying more for auto insurance. *See* Compl., ¶¶ 55–56, 58, 62–65. Specifically, Allstate F&C's CGR *rating factor* feature allegedly assigns each policyholder a CGR factor based on which of

-24-

922 million microsegments the policyholder is in, as determined by Allstate's algorithms. *Id.* at ¶ 56. Plaintiffs contend that longer tenured policyholders receive positive CGR factors, which increase their premium; while newer policyholders are assigned negative CGR factors, which decrease their premium. *Id.* at ¶ 59. According to Plaintiffs, the rates they pay – specifically, the CGR factor they are assigned – are unreasonable because they differentiate between policyholders solely on the basis of policyholder tenure, which Plaintiffs allege is not related to the risk they pose and thus not actuarially justified. *See id.* at ¶ 66 ("Allstate's microsegments are not risk-based."). Plaintiffs also contend that Allstate F&C's rates are unfairly discriminatory because they are based on an unlawful CGR factor. Both objections to the use of the CGR factor and the way in which it was determined based on the 922 million microsegments challenge Allstate F&C's ratemaking process and the rates that Allstate F&C has filed with the TDI, *without TDI's disapproval*.

Under both alleged schemes, the claims implicate the ratemaking practices allegedly employed by the ATIE as violating Texas law (as unreasonable, illegal, unfairly discriminatory, or not actuarially sound) and are therefore barred by the filed rate doctrine.

### 2.     This Court May Not Alter The Filed Rates

Plaintiffs are seeking to recover a portion of the allegedly higher premiums that they paid as compared those customers in the Open Books or due to the operation of the CGR rating factor. Compl., ¶ 2 (alleging "discriminatory schemes, both of which involve Allstate *charging higher premiums* to its more tenured policyholders than it charges otherwise identically-situated newer policyholders for the same or materially the same coverages.") (emphasis added); *id.* at ¶¶ 90, 91, 92 ("Plaintiffs and each member of the proposed Classes *paid more* to Allstate than they would have paid but for Allstate's discriminatory conduct alleged herein.") (emphasis added). In other words, Plaintiffs seek damages "allegedly caused by the payment of a rate on file with a regulatory

commission." *Porr v. NYNEX Corp.*, 660 N.Y.S.2d 440, 442 (2d Dep't 1997) (barring such claims on filed rate grounds).  As such, Plaintiffs impermissibly "ask[] [this Court] to excuse them from paying the filed rate."  *Marcus*, 128 F.3d at 61 (applying filed rate doctrine to bar Plaintiffs' claims).  The filed rate doctrine prohibits actions seeking such relief.

To remedy their alleged injuries, Plaintiffs seek to have this Court engage in impermissible judicial ratemaking by awarding damages for Plaintiffs paying of premiums above the amount Plaintiffs' allege they should have paid.  To fashion such damages, this Court would have to alter the filed rates and determine what a reasonable rate for Plaintiffs' insurance would have been. Doing so would be improper because the filed rate doctrine bars courts from engaging in judicial ratemaking and altering the validity of an insurer's filed rates.  *See Winn*, 2009 WL 7099484, at *9 (finding that the plaintiffs' allegations "clearly rest on the amount paid by Plaintiffs for [] insurance, effectively implicating the validity of the rates….").

The Complaint not only challenges the filed rates and asks this Court to engage in impermissible judicial ratemaking, it also seeks relief (a refund of premium based on filed rates) that is contrary to the Insurance Code.  *See* Compl., ¶¶ 90–91, 145, 159 (seeking economic damages on the basis of being charged higher premiums than Plaintiffs' contend they should have paid); Tex. Ins. Code § 2254.003(b) (providing the Commissioner the ability to issue refunds/discounts when *disapproving* rates as excessive or unfairly discriminatory).  Plaintiffs are asking this Court to determine that Allstate's rates are excessive by having this Court (or a jury) disregard the lawful rates filed with the TDI and substitute lower rates formulated by the Court (or jury) to reimburse Plaintiffs for the difference between the lawful filed rate and a lower rate calculated by the Court (or jury).  Any award of damages would thus upset the regulatory scheme set out by the Texas Legislature.  *See Southwestern Bell Telephone Co. v. Metro-Link Telecom,*

*Inc.*, 919 S.W.2d 687, 693 ("Allowing a state court to award damages to a customer based on a rate lower than the filed rate would undermine the regulatory scheme.").

Texas federal courts have dismissed class action complaints seeking similar relief.  In *Korte*, for example, the plaintiffs filed a putative class action complaint for fraud, negligence, a violation of Texas' consumer protection statute and insurance code based on the use of an alleged illegal factor in the rate filing.  48 F. Supp. 2d at 649–50.  The plaintiffs sought a refund of the alleged premium overcharge (*i.e.*, "the difference between the amount they were charged for their car insurance and the amount they would have been charged if Allstate's filed rates had not been 'excessive for the risks to which they apply.'").  *Id.* at 650.  Dismissing all the claims, the court found that "[a]ny calculation of damages would involve this Court in retroactive alteration of the filed rate, a function which this Court should not perform."  *Id.* at 652; *see also, e.g.*, *Brown v. MCI WorldCom Network Servs. Inc.*, 277 F.3d 1166, 1170 (9th Cir. 2002) (finding that if a court's decision "would have the effect of changing the filed [rate]," the claims must be dismissed); *McCray v. Fidelity Nat. Title Ins.*, 682 F.3d 229, 242 (3d Cir. 2012) ("[T]he District Court's interference in the rate making process would 'subvert the authority' of the DOI by second-guessing its rate determination, thus further implicating the nonjusticiability strand.") (citations omitted).  Indeed, courts across the country routinely dismiss actions where, as here, the damages sought would require the factfinder to substitute its determination of a rate for the lawful rate filed with the regulatory agency.[9]

---

[9] *See, e.g.*, *Uniforce Temp. Pers., Inc. v. Nat'l Council on Comp. Ins., Inc.*, 892 F. Supp. 1503, 1512, n.11 (S.D. Fla. 1995) (dismissing challenge to alleged "excessive" and "exorbitant" rates even upon plaintiffs' suggestion that the unlawful conduct was hidden from the regulator); *N.C. Steel, Inc.*, 347 N.C. 627 at 632 ("a plaintiff may not claim damages on the ground that a rate approved by a regulator as reasonable is nonetheless excessive because it is the product of unlawful conduct."); *Taffet v. Southern Co.*, 967 F.2d 1483, 1491 (11th Cir. 1992) (affirming dismissal of

At bottom, insurance ratemaking is a complex subject that involves many detailed considerations and, as recognized in *Winn* "courts lack the competence to set rates." *Winn*, 2009 WL 7099484, at *4; *see also In re N.J. Title*, 683 F.3d at 457 ("the nonjusticiability strand recognizes that federal courts are ill-equipped to engage in the ratemaking process."). As one court explained:

> As compared with the expertise of regulating agencies, courts do not approach the same level of institutional competence to ascertain reasonable rates. Regulators employ their peculiar expertise to consider the whole picture regarding the reasonableness of a proposed rate. They make hundreds if not thousands of decisions about the submitted costs and ultimately arrive at the approved filed rate. Courts are simply ill-suited to systematically second guess the regulators' decisions and overlay their own resolution.

*Wegoland*, 27 F.3d at 21. Because Plaintiffs' Complaint requires this Court to engage in precisely this type of ratemaking, the filed rate doctrine requires dismissal.

Recognizing the fatal effect of the filed rate doctrine on their claims, Plaintiffs try, through self-serving, conclusory statements, to avoid the doctrine's application. For instance, Plaintiffs repeatedly assert that they are "not challenging any of [the ATIE's] filed rates or rating factors as being unreasonable or excessive, but rather are challenging Allstate's internal unfair discriminatory conduct as alleged herein." Compl., ¶ 52; *see also id.* at ¶ 67. However, no amount of artful pleading by Plaintiffs can disguise what this case is about: a challenge to the ratemaking and reasonableness and legality of the amount they pay for auto insurance with the ATIE – and thus the ATIE's filed rates. Similar to what other courts have done, this Court also should reject Plaintiffs' attempt to plead around the filed rate doctrine. *Porr*, 660 N.Y.S.2d at 442 ("It has repeatedly been held that a consumer's claim, however disguised, seeking relief for an injury

---

claims where plaintiff sought "to recover damages measured by the difference between the filed rate and the rate that would have been charged absent some alleged wrongdoing.").

allegedly caused by the payment of a rate on file with a regulatory commission, is viewed as an attack upon the rate approved by the regulatory commission.").

*Winn* is instructive in this regard. There, the plaintiffs sought damages resulting from allegedly illegal conduct on the part of title insurers that impacted the price of title insurance and was allegedly hidden from the TDI. 2009 WL 7099484, at *1. Plaintiffs attempted to avoid the filed rate doctrine by characterizing their claims as merely challenging the insurer's illegal, hidden conduct. *Id.* at *9. But the court held that plaintiffs' characterization of their claims as "not barred because they are not seeking to undo a rate, but are seeking merely to recover damages based on defendants' illegal conduct" was "nothing short of disingenuous." *Id.* The court found that plaintiffs' "allegations clearly rest on the amount paid by Plaintiffs for title insurance, effectively implicating the validity of rates set for title insurance in Texas. Plaintiffs thus cannot now contend that they should not be subject to the filed rate doctrine on the basis that they are not challenging the validity of the rates approved by the Texas Department of Insurance." *Id.* Furthermore, the court explained that "even if the claim does not directly attack filed rate[s], [an] award of damages that would effectively result in judicial determination of reasonableness of rate[s] is prohibited under the filed rate doctrine." *Id.* (citing *Hill v. BellSouth Telecomms, Inc.*, 364 F.3d 1038, 1317 (11th Cir. 2004)).

> **D.** **Plaintiffs Fail To State A Claim For Unfair Discrimination Under Texas Law Because Texas Insurance Code Section 544.052 Relates To Discrimination In A Single Policy Of Insurance (Open/Closed Book Scheme)**

Dismissal of Plaintiffs' first cause of action is also warranted because Plaintiffs fail to state a claim under Texas Insurance Code § 544.052. That section of the Insurance Code applies to "unfair discrimination" in "a policy or contract of insurance," meaning a *single policy*. In contrast, Plaintiffs' allegations involve **different policies, with different companies, that have lower (and**

*thus different) rates*.  The Complaint alleges that the Open/Closed Book scheme consists of an effort to "preclude Closed Book customers or the vast majority of them from accessing the cheaper Open Book *policies* with materially *similar* coverages."  Compl., ¶ 36 (emphasis added).  Such a claim is not actionable under Section 544.052 of the Insurance Code.

**1.      Plaintiffs Fail To Allege Discrimination In A Single Policy Of Insurance As Section 544.052 Requires**

Texas Insurance Code § 544.052 applies to "unfair discrimination between individuals of the same class and of essentially the same hazard" in a single "policy or contract of insurance."  In full, the statute states:

> Sec. 544.052. UNFAIR DISCRIMINATION. A person may not in any manner engage in unfair discrimination or permit unfair discrimination between individuals of the same class and of essentially the same hazard, including unfair discrimination in:
>
> (1) the amount of premium, policy fees, or rates charged for a policy or contract of insurance;
>
> (2) the benefits payable under a policy or contract of insurance; or
>
> (3) any terms or conditions of a policy or contract of insurance;

For unfair discrimination to exist in the "amount of premium, policy fees, or rates charged for a policy or contract of insurance" the policies must be the same – that is, the policies must be offered by the same insurer and have the same coverages, terms, and conditions.

The cases in which the nearly identical, predecessor version of the statute has been applied demonstrate that the prohibited conduct relates to treatment under the same policy.  For example, in *Cortez v. Progressive County Mut. Ins. Co.*, the plaintiff alleged that "[p]aying a 10% commission rate for the ***same coverage, same policy, same company*** that can be obtained at a 7% commission rate" constituted unfair discrimination.  61 S.W.3d 68, 75 (Tex. App.—Austin 2001, pet. granted, judgm't vacated pursuant to settlement) (emphasis added).  There, under a single

-30-

policy of insurance, the insurer allegedly "allowed its agents to charge three different commission rates, which [led] to insureds being charged three different premiums or [effective] rates for [the same] insurance." *Id.* In other words, the different commission levels served as the only differentiations in price between "individuals of the same class and essentially the same hazard." *Id.* The policies, coverages, underlying rates, etc. were all the same, thus allowing the court to squarely consider whether the commission level differences were unfairly discriminatory under the statute.

It is necessarily true that different policies, offered by different insurers, have different rates. As explained above, rates are based, among other things, on an individual insurer's expenses and loss experiences and other factors. *See* Texas Ins. Code § 2251.002. To compare premiums, policy fees, or rates across different contracts of insurance by different insurers is illogical, as doing so would mean that an insurer would be engaged in "unfair discrimination" if that insurer charged more for the same coverage than some other insurer. Such a result is absurd as those differences are actuarially mandated by the ratemaking process.

Plaintiffs do not even allege that unfair discrimination occurred within a single policy or contract of insurance offered by a single insurance company. To the contrary, the Complaint contends that the alleged unfair discrimination stems from differences in prices between the Closed Book Policies and the Open Book Policies – *i.e.* discrimination between different policies offered by different ATIE insurers. *See* Compl. at ¶¶ 27 ("Allstate maintains multiple Texas auto insurance 'companies' (or 'books' of business) [that]  issue auto policies to policyholders in Texas"); 28 (detailing the different ATIE auto insurance books that are "open" and those that are "closed"); 35 (alleging that "Closed Book policyholders pay[] higher premiums than…new Allstate Texas

policyholders pay in the Open Books…."). Plaintiffs' allegations make clear that they cannot state a claim under Texas Insurance Code § 544.052.

### 2. In Any Event, Plaintiff's Allegations Of Similarity Between The Coverages Are Conclusory And Do Not State A Claim

Plaintiffs' allegations are also deficient because they fail to allege that the coverages under the Closed Book and Open Book policies are the same, and thus the difference in pricing is unfair, as is required to state a claim under Texas Insurance Code § 544.052. *See Cortez*, 61 S.W.3d at 75 (under nearly identical predecessor statute); *see also Hogue v. United Olympic Life Ins. Co.*, 39 F.3d 98, 100 (5th Cir. 1994) (same). Plaintiffs' conclusory statement that the coverages are similar or the same, without any facts, is not enough to state a claim. *See* Compl., ¶ 48 (alleging that the Closed Book Polices and Open Book Policies have "insurance coverages [that]…are the same or materially the same…."); *id.* at ¶ 36 ("cheaper Open Book policies with materially similar coverages"). The *Twombly* pleading standard requires "more than labels and conclusions." 550 U.S. at 555. But Plaintiffs allege no specific facts showing that the Open and Closed Book coverages are the same, or, for that matter, materially similar. There are no facts alleged about the coverages in the Closed Book Policies or the Open Book Policies, and the Complaint fails to specify in what allegedly "material" respects the policies are similar, such that the alleged difference in rates between the policies constitutes "unfair discrimination." Plaintiffs' threadbare statements that the coverages under the Closed Book Policies are the same or similar as those under the Open Book Policies do not pass muster under *Twombly*. *Id.*

Second, the statute requires that the policies have the same coverages – not similar coverages. In interpreting the nearly identical statute that preceded Section 544.052, the Fifth Circuit made clear that "the [plaintiffs] had to show that other individuals of the same class and hazards as them were charged lesser premiums or were given greater benefits" for the same

coverage.  *Hogue*, 39 F.3d at 100.   Moreover, Section 544.053, which provides exceptions to

Section 544.052's prohibition on unfair discrimination, explicitly excepts differences in rating "for

the same coverage [that are] based on sound actuarial principles."   This is consistent with the

delegation of authority to the TDI and Commissioner to regulate rates.   There is no factually

supported allegation here that the policies involve the same coverage, which is fatal.

> ### E.   Plaintiffs' Claims Should Be Dismissed Because They Have Not Sufficiently Alleged Injury-In-Fact

Dismissal of Plaintiffs' claims is also warranted because the Complaint fails to sufficiently

allege an injury-in-fact.   Under Texas Insurance Code § 544.054, a person may bring an action on

the basis of a violation of Section 544.052 if that person "has sustained economic damages as a

result of [the] violation."   Here, Plaintiffs make no claim, nor could they, that they did not receive

exactly what they paid for.   Plaintiffs' Complaint makes no allegation that Plaintiffs were charged

or paid premiums in excess of the rates filed by the ATIE.   There is no dispute that the ATIE

charged premiums in accordance with their filed rates for the insurance policies and coverages

purchased by the Plaintiffs.   Moreover, Plaintiffs do not make any claims that they did not receive

the insurance coverage provided for by their respective auto insurance contracts with the ATIE.

In short, Plaintiffs received the benefit of their contractual bargain with the ATIE and thus have

sustained no economic injury necessary to state a claim.

Additionally, because Plaintiffs fail to sufficiently allege injury-in-fact, Plaintiffs lack

standing under Article III of the Constitution, requiring dismissal of  the Complaint under Federal

Rule of Civil Procedure 12(b)(1).   The Supreme Court of the United States has made clear that

"[t]he party invoking federal jurisdiction bears the burden of establishing" that it has Article III

standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   To establish standing, a

plaintiff must plead "(1) an injury-in-fact that is concrete and actual or imminent, not hypothetical;

(2) a fairly traceable causal link between the injury and the defendant's actions; and (3) that the injury will likely be redressed by a favorable decision." *Patterson v. Rawlings*, 287 F. Supp. 3d 632, 637 (N.D. Tex. 2018) (citations omitted). Plaintiffs do not plead facts that meet these requirements.

*First*, Plaintiffs do not allege an injury-in-fact because they do not claim they failed to receive from the ATIE the insurance that they paid for. Instead, "when a party receives 'exactly what [he] paid for, and thereby 'received the benefit of his bargain,' he has not sustained 'an economic injury that satisfies Article III standing." *Zamber v. American Airlines, Inc.*, No. 4:20-cv-00114-O, 2020 WL 3163037, at *7 (N.D. Tex. June 11, 2020) (quoting *Wendt v. 24Hour Fitness USA, Inc.*, 821 F.3d 547, 550–51 & n.10 (5th Cir. 2016)) (alteration in original). In *Zamber*, the court found that the Plaintiff lacked standing because it was undisputed that he received the travel insurance "coverage and services for which he contracted." *Id.* (citing *Flores v. United Airlines*, 425 F. Supp. 3d 520, 532 (N.D. Ill. 2019) ("Plaintiff has alleged she purchased travel insurance, and she alleges she received travel insurance. So long as she received the benefit of the bargain, she was not injured."). The same is true here.

*Second*, Plaintiffs also cannot establish standing because the alleged injury is not "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560. Here, Plaintiffs chose to sue AllCorp. However, Plaintiffs' allegations relate to the "independent action of some third part[ies] not before the court" – namely, the ATIE that issued Plaintiffs their policies of private passenger auto insurance and collected their premium. *Id.* As explained above, AllCorp. has no business dealings in the state of Texas and Plaintiffs have made no showing that Allstate Corp. was involved in any of the specific allegations of wrongdoing. As Mr. Gordon has attested, AllCorp. is not involved in the ratemaking practices of any of the ATIE. *See Zamber*, 2020 WL

3163037, at *9 (holding that Plaintiff also lacked standing because "[a]ny conceivable injury [he] suffered" was the result of a party not before the court as the Defendant "set[] no price, impose[d] no charge, provide[d] no insurance services, and enter[ed] into no contract with a consumer with respect to trip insurance.").  In the absence of allegations establishing standing, Plaintiffs' claims must be dismissed.

## IV.   PLAINTIFFS' CLAIMS ARE SUBJECT TO THE PRIMARY JURISDICTION DOCTRINE AND THIS COURT SHOULD DEFER TO THE TDI'S PRIMARY JURISDICTION

To the extent that any of Plaintiffs' claims survive dismissal, this lawsuit should be stayed in deference to the Texas Department of Insurance under the primary jurisdiction doctrine.  The Complaint implicates complex regulatory issues because Plaintiffs contend that the filed rates and rating practices are unfairly discriminatory, and thus not based on sound actuarial principles.  Whether the ATIE's rates and practices are actuarially sound, reasonable, and in compliance with the Texas Insurance Code – as regulated by the TDI and Commissioner – are central issues in dispute that fall within the express authority of the TDI and Commissioner to decide.  These issues should be left to the TDI and Commissioner to resolve because of their special competence and expertise and to preserve the uniform application of the Texas Insurance Code and regulations.  Moreover, a stay of this proceeding would preserve the legislatively-designated role of the TDI and Commissioner as administrators of the Insurance Code and avoid impermissible judicial ratemaking.

The primary jurisdiction doctrine "'allocates power between courts and agencies when both have the authority to make initial determinations in a dispute.'"  *Grigson*, 2018 WL 635173, at *3 (quoting *In re Sw. Bell Tel. Co., L.P.*, 226 S.W.3d 400, 403 (Tex. 2007)).  As this Court has described:

> Under this doctrine, trial courts should defer to appropriate administrative agencies when (1) the agency is staffed with experts trained in handling complex problems within the agency's purview, and (2) great benefit is derived from the agency's uniform interpretation of the laws within its purview and the agency's rules and regulations when courts and juries might reach differing results under similar fact situations.

*Id.* (quoting *In re Sw. Bell Tel. Co., L.P.*, 226 S.W.3d at 403) (quotation marks omitted). When both of these factors are met, "the court should abate the lawsuit and suspend finally adjudicating the claim until the agency has an opportunity to act on the matter." *In re Sw. Bell Tel. Co., L.P.*, 226 S.W.3d at 403 (quoting *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 208 (Tex. 2002)). In other words, the primary jurisdiction doctrine "guides a court in determining whether it should route the threshold decision about certain issues that are 'within the special competence of an administrative agency' to that agency." *Beacon Nat. Ins. Co. v. Montemayor*, 86 S.W.3d 260, 271 (Tex. 2002) (quoting *Cash. Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 18 (Tex. 2000)). Here, both of the factors are met and further adjudication in this Court should be stayed in deference to the TDI and Commissioner. *See id.* at 272 (finding that "[b]oth of the fundamental principles underlying the doctrine of primary jurisdiction lead to the conclusion that the courts should defer to TDI, subject to appropriate judicial review, on issues presented in this case.").

### A.     The Issues Raised By The Complaint Are Within The Special Competence, Expertise, And Authority Of The TDI And Commissioner

Under the primary jurisdiction doctrine, a court should defer to the administrative agency with special competence, expertise and authority to decide issues of regulatory import. *Mercury Motor Express, Inc. v. Brinke*, 475 F.2d 1086, 1091–92 (5th Cir. 1973); *see also U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 63–64, (1956) (the primary jurisdiction doctrine "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have

been placed within the special competence of an administrative body"). The Complaint raises a number of technical and complex issues related to rates and ratemaking.

*First*, with respect to the Price Tolerance scheme, the Complaint raises the following issues: whether Allstate F&C's use of the CGR factor in its rating plan is actuarially sound (*see* Compl., ¶¶ 62, 64, 66, 156, 158); whether Allstate F&C's rates or premiums are excessive, unreasonable, and/or unfairly discriminatory (*see id.* at ¶¶ 58–60); whether any of Allstate F&C's conduct amounts to unfair discrimination under Tex. Ins. Code § 544.052 (*see id.* at ¶¶ 54–56, 63); and what, if any, economic damages Plaintiffs are entitled to for paying higher premiums (*see id.* at ¶¶ 91, 159).

*Second*, as for the Open/Closed Book scheme, the Complaint raises the following issues: whether the Closed Book rates are actuarially sound (*see id.* at ¶¶ 49, 51, 142, 144); whether the Closed Book rates were excessive, unreasonable, and/or unfairly discriminatory (*see id.* at ¶¶ 45–46, 51); whether Allstate's conduct amounts to unfair discrimination under Tex. Ins. Code § 544.052 (*see id.* at ¶¶ 35, 54, 80, 139); and what, if any, economic damages Plaintiffs are entitled to for paying higher premiums (*see id.* at ¶¶ 90, 145).

The Texas Legislature has given the TDI and Commissioner the authority to make such decisions under the complex and comprehensive regulatory structure governing auto insurance in Texas. The TDI and Commissioner are specifically tasked with the obligation to determine whether rates are "excessive, inadequate, unreasonable, or unfairly discriminatory." Tex. Ins. Code § 2251.001. Such decisions involve an analysis and determination of whether the rates are actuarially sound. *See id.* § 2251.051(d). Allowing judicial intervention in ratemaking here would be contrary to the Insurance Code and the delegation of authority to the TDI and Commissioner.

The delegation of this authority is even more important where, as here, insurance ratemaking and actuarial soundness require special expertise and competence. As one court has explained:

> Insurance ratemaking is a technical, complicated and involved procedure carried on by trained men. It is not an exact science. Judgment based upon a thorough knowledge of the problem must be applied. Courts cannot abdicate their duty to examine the evidence and the adjudication, and to interpret and apply the law, but they must recognize the value of the judgment of an Insurance Commissioner who is specializing in the field of insurance and the efficacy of an adjudication supported by evidence of experts who devoted a lifetime of service to ratemaking.

*Allstate Ins. Co. v. Gillespie*, 275 Cal. Rptr. 525, 535 (1990) (quoting *Ins. Dept. v. City of Philadelphia*, 173 A.2d 811, 819 (Pa. Super. 1961)).

With respect to auto insurance rates, the Commissioner not only has the authority, but is required to review the rates materials and "shall disapprove the rate if the commissioner determines that the rate" is unfairly discriminatory. Tex. Ins. Code §§ 2251.103(b); 2251.051(d). The Commissioner oversees and regulates the conduct of insurers. In such instances, where a regulatory body has the authority to prohibit unfair discrimination, deferral under the primary jurisdiction doctrine is proper. For example, the Fifth Circuit in *Penny v. Southwestern Bell Telephone Co.*, applying Texas law, upheld the application of the primary jurisdiction doctrine in a case involving alleged unfair discrimination in telephone rates. 906 F.3d 183, 187 (5th Cir. 1990). The court explained that "[s]ince the [agency] has specific authority to prohibit discrimination, it is more accustomed to adjudicating this type of issue than this federal court." *Id.* Thus, the court noted, "[r]outing cases through the [agency] will permit the [agency] to apply its specialized knowledge of rates and their application." *Id.*

In sum, this case meets the first requirement for application of the primary jurisdiction doctrine.

**B.**     **The Exercise Of Primary Jurisdiction Promotes Uniformity Of Complex Regulatory Laws**

This case also meets the second requirement for application of the primary jurisdiction doctrine.  Deferring to the primary jurisdiction of an agency "is favored when it will promote even-handed treatment and uniformity in a highly regulated area."  *Mercury Motor*, 475 F.2d at 1092. Auto insurance is highly regulated in Texas, and "[i]n matters of insurance…the [Texas] Supreme Court has recognized the importance of uniformity…."  *Beacon Nat'l Ins. Co.*, 86 S.W.3d at 272. This is especially true for ratemaking issues which involve complex regulatory considerations. *See Mercury Motor*, 475 F.3d at 1092 ("The importance of uniformity has been recognized especially in cases involving reasonableness of rates tariffs or rates.").

Plaintiffs allege that the challenged practices effect "millions of other similarly-situated Allstate Texas personal auto insurance policyholders."  Compl., ¶ 1.  Allowing the TDI and Commissioner to resolve the Open/Closed Book and Price Tolerance issues will promote a more uniform application of the Insurance Code and its associated regulations for ratemaking, as well as uniform standards for what constitutes unfair discrimination.  *See Penny*, 906 F.2d at 187–88 (noting that the agency's special knowledge "should also aid in creating more uniform standards to be followed when evaluating other claims for discrimination.  Hence, by allowing the [agency] to determine this issue, concerns for uniformity and specialized knowledge are met."); *Beacon Nat'l Ins. Co.*, 86 S.W.3d at 271–72 ("Courts also defer to an agency when uniform decision making is essential to carry out the purposes of the regulatory scheme.").

**V.     CONCLUSION**

Plaintiffs' Complaint should be dismissed under Rule 12(b)(2) and (6).  This Court lacks personal jurisdiction over The Allstate Corporation.  Plaintiffs' claims also are bared by the filed rate doctrine and Plaintiffs have failed to state a claim upon which relief may be granted.  For these

reasons, and all of the reasons outlined above, Defendant The Allstate Corporation respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety with prejudice.  Alternatively, this Court should enter an order staying this action under the primary jurisdiction doctrine pending review by the Texas Department of Insurance and Texas Insurance Commissioner.

Date: June 26, 2020                                       Respectfully submitted,

*/s/ Amy L. Ruhland*
Amy L. Ruhland (Rudd)
Texas Bar No. 24043561
DLA Piper LLP (US)
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
Telephone: 512-457-7220
Facsimile:  512-721-2220
Amy.Ruhland@us.dlapiper.com

*/s/ Michael P. O'Day*
Michael P. O'Day (admitted *pro hac vice*)
DLA Piper LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, MD 21209-3600
Telephone:   410.580.3000
Facsimile:  410.580.3001
Michael.Oday@us.dlapiper.com

*Attorneys for Defendant*
*The Allstate Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of June, 2020, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to:

**ATTORNEYS FOR PLAINTIFFS**


*/s/ Amy L. Ruhland*
Amy L. Ruhland (Rudd)