IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

SARA SHANNON and ROSA PALACIOS and
DEBRA CORBELLO, Individually and on
behalf of all others similarly situated,

    Plaintiffs,

v.

                      Civil Action No. 1:20cv448-LY

THE ALLSTATE CORPORATION and
ALLSTATE INSURANCE COMPANY,

    Defendants.

## PLAINTIFFS' SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

COME NOW, Plaintiffs Sara Shannon, Rosa Palacios, and Debra Corbello ("Plaintiffs"), who file this Surreply in Opposition to Defendants The Allstate Corporation and Allstate Insurance Company's (collectively "Allstate") Motion to Dismiss.

Allstate's Reply Brief (Dkt. No. 45) raises two (2) additional arguments not briefed in their Motion to Dismiss (Dkt. No. 35). Plaintiffs are duty-bound to respond to these arguments not only because they are new, but because they both contain substantial inaccuracies that must be addressed for purposes of clarity.

First, regarding the Price Tolerance claim, Allstate now insists that Plaintiffs' allegations, namely that Allstate's CGR assignments are done unilaterally and internally by Allstate pursuant to secret Allstate algorithm(s) projecting each customer's price "tolerance" or "elasticity", are "demonstrably false." (Dkt. No. 45, at 10.) To support this, Allstate cites a statement in its manual rules which provides, *inter alia*, that "Each policy will be assigned to a Micro-Segment based on the following criteria: (a) the birth date of the oldest operator on the policy, (b) the number of

1

Years with Prior Carrier, as defined in Rule 57, (c) Territory as defined by current address, and (d) the gender of the oldest operator on the policy" (Dkt. No. 45 at 11).

Allstate implies the assignment process at issue for Plaintiffs' Price Tolerance claim is not internal, as is alleged, but is set forth in its rate filings. However, the above language relates to how Allstate establishes the "microsegments" themselves in the first place, ***not*** to the purely internal Allstate assignment process ***whereby customers are actually assigned by Allstate among the nearly infinite number of rates***. Allstate discloses in its filings how the microsegments are set up (i.e., the four criteria identified above)—as alleged, there are ~900 million permutations of the four criteria, virtually ensuring each customer has their own personal "microsegment." (FAC, ¶¶ 8, 10, 73, 90.) But the pertinent assignment process here is the ***next*** step—the microsegment-to-"Complementary Group" assignment process, only vaguely referenced in the next sentence of the Manual rules from which Allstate quotes. This next step involves Allstate assigning the "microsegments" (i.e., the individual customers each comprising their own personal "microsegment") among the various Complementary Groups and thus the corresponding rates associated with the Complementary Groups (the "CGRs").[1] As alleged, ***those*** assignments are made internally by Allstate completely at its discretion, pursuant to secret algorithm(s) that project each customer's relative price "elasticity" or "tolerance." (FAC, ¶¶ 90-94.) None of ***that*** is filed with the TDI or publically available; if it was, certainly Allstate would have cited it in its Reply. And the very limited information Allstate does tell the TDI about it is alleged to have been false and misleading. (FAC, ¶¶ 91, 93, 94.) Thus, while Allstate may take issue with the exact language

---

[1] Plaintiffs have already seen evidence of and expect further discovery to reveal that Allstate decided to assign each of its Texas policies to their own personal "microsegment" prior to application of its internal price elasticity projections as an artifice to gin up an argument, if challenged, that Section 544.052 would not apply to its conduct.

Plaintiffs use to describe the internal Allstate assignment process at issue (e.g., "microsegment assignment" as opposed to a different term), the substance of Plaintiffs' allegations are not false (nor even disputed, apparently).

Second, also related to the Price Tolerance claim, Allstate attempts to distinguish its price tolerance-based internal assignment conduct from the internal assignment conduct at issue in the *Cortez* case as follows:

> In *Cortez v. Progressive Cty. Mut. Ins. Co.*, plaintiffs alleged that an insurance carrier allowed its agents to charge three different commission levels, thus altering the total amount paid for insurance by the insureds; however, the claim was unrelated to the *rates for the insurance* that were charged and attributed to the insurer.

(Dkt. No. 45, at 13 & n.9 (emphasis in original).) By asserting Progressive's commission levels in *Cortez* were "unrelated to the rates for the insurance that were charged and attributed to the insurer" Allstate appears to suggest the commission levels were separate from, and assessed on top of, the rates filed by the defendant (Progressive) in that case.

Plaintiffs had occasion to review the pleadings in *Cortez* when Farmers made a similar misstatement, *see Grigson v. Farmers Group, Inc.*, No. 1:17cv88, at Dkt. No. 44, and while not clear in the published opinion, it is apparent from Progressive's papers in the case that the varying commissions at issue in *Cortez* were **not** separate from the rates filed. Progressive made individual rate filings with TDI, one for each of the agent commission levels. As stated by Progressive in its pleadings filed with the Texas Supreme Court in *Cortez*:

> [T]he different commission rates are filed as different commission classes. The proof shows that, for many years, **Progressive has made separate filings of rate schedules with [TDI] for each of its commission plans**. Thus, the lowest "Supersaver" commission (7%) is filed as a premium classification, and the "Advantage" plan (10%) is a separate and different premium class. The differences in premium [for each such filed rate plan] reflect the difference in commission cost, ***which is an actual expense that properly is***

***reflected in the rate***, or premiums.

*Progressive Cnty. Mut. Ins. Co. v. Cortez*, No. 01-1026, Pet'r Br. on the Merits, at 6 (Tex. Filed Feb. 13, 2002) (emphasis added).[2] Progressive and its agents, in turn, exercised their own discretion to assign the customers among the three sets of rates based on their internal assessment of how much money each customer would be willing to pay.

Dated: November 20, 2020.  RESPECTFULLY SUBMITTED,

      /s/ John R. Davis
John R. Davis (TX Bar 24099518)
Michael L. Slack (TX Bar 18476800)
SLACK DAVIS SANGER, LLP
6001 Bold Ruler Way, Suite 100
Austin, TX 78746
Tel.: 512-795-8686
Fax: 512-795-8787
jdavis@slackdavis.com
mslack@slackdavis.com

Joe K. Longley (TX Bar No. 00000114)
LAW OFFICES OF JOE K. LONGLEY
3305 Northland Dr. Suite 500
Austin, Texas 78731
Tel.: 512-477-4444
Fax: 512-477-4470
joe@joelongley.com

Roger N. Heller (CA Bar 215348) (*pro hac vice*)
Jallé H. Dafa (CA Bar 290637) (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel.: 415-956-1000
Fax: 415-956-1008
rheller@lchb.com
jdafa@lchb.com

---

[2] The Supreme Court docket for *Cortez*, where this brief can be accessed for free as a pdf, is available at http://www.search.txcourts.gov/Case.aspx?cn=01-1026&coa=cossup.

Jonathan D. Selbin (NY Bar 3948684 (*pro hac vice*))
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212-355-9500
Fax: 212-355-9592
jselbin@lchb.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel for Defendants.

/s/ *John R. Davis*